UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MELVIN CORDERO,<br><br>Defendant | CRIMINAL No. 22-10301-RGS |

GOVERNMENT'S SENTENCING MEMORANDUM

On March 15, 2022, the defendant Melvin Cordero delivered 7,000 pills containing fentanyl and fentanyl analog to a cooperating source of the Drug Enforcement Administration (DEA) in Boston. The transaction was set up by an individual in the Dominican Republic. Following the transaction, Cordero continued to try to sell fentanyl pills—this time to an undercover DEA agent (the "UC")—and sent photos of available pills to the UC though no sale occurred. The UC also communicated with the individual in the Dominican Republic who tried to sell the UC a pill press that Cordero had. On the date of his arrest, the DEA seized the press from Cordero.

On November 10, 2022, a federal grand jury returned an Indictment charging the defendant with one count of Distribution of and Possession with Intent to Distribute Fentanyl and p-Fluorofentanyl, in violation of 21 U.S.C. § 841(a)(1). On May 10, 2023, pursuant to a plea agreement, the defendant pleaded guilty to the single count. The Pre-Sentence Report ("PSR") calculates defendant's Guidelines Sentencing Range ("GSR") as 57 – 71 months' imprisonment and 1-3 years of supervised release. For the reasons set forth below, the government recommends a sentence of imprisonment of 46 months.

I.  ADVISORY SENTENCING GUIDELINES

The PSR found that the defendant was accountable for 167 grams of fentanyl and 255 grams of fentanyl analog (p-Florofentanyl), which converts to 2,967.5 kilograms of converted drug weight. PSR ¶ 19. The defendant's base offense level for that quantity of drugs is 30. *Id*. Defendant's offense level was further reduced three levels for his timely acceptance of responsibility under USSG § 3E1.1. PSR ¶¶ 26, 27. After further adjustment the defendant's total offense level is 25. PSR ¶ 28. The defendant has a total criminal history score of zero, which places him in Criminal History Category I. PSR ¶¶ 31, 32. The defendant's advisory GSR is 57 – 71 months' imprisonment and 1-3 years of supervised release. PSR ¶¶ 55, 58. The government agrees with the PSR's calculation of the GSR.

Additionally, the proposed United States Sentencing Guideline § 4C1.1 (Adjustment for Certain Zero-Point Offenders) ("Proposed Guideline § 4C1.1") becomes effective on November 1, 2023, unless Congress acts to the contrary. This proposed guideline provides for an additional two-level decrease for defendants, such as Cordero, who have no criminal history points and meet certain other criteria. Here, the defendant meets all criteria necessary under this proposed guideline to receive a two-level decrease once the guideline becomes effective on November 1, 2023. If he were to receive this two-level decrease now, the defendant's total offense level would be 23 and his GSR would be 46-57 months. The government believes a downward variance to account for this proposed guideline is appropriate. For that reason, and those set forth below, government recommends a sentence of 46 months' imprisonment, the low end of the GSR with the two-level downward variance. If the Court agrees and does afford this variance, the government asks that the Court make clear that Defendant will not be entitled to seek a further reduced sentence based on proposed guideline § 4C1.1 once it goes into effect later this year.

II.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Consideration of the § 3553(a) factors demonstrates that a sentence of 46 months' imprisonment is sufficient, but not greater than necessary, to meet the goals of sentencing.

A.     **Nature of the Offense**

The defendant delivered to a DEA cooperator 7,000 pills containing fentanyl—a deadly enough narcotic—and the even deadlier fentanyl analog. Cordero did not stop there but continued to try to sell pills to a DEA UC and safeguarded a press that is used for manufacturing fentanyl pills. There is no telling what damage Cordero would have done to the community had Cordero's fentanyl pills been released to into the community. His actions helped fuel the opiod epidemic in Massachusetts and beyond.

This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in more overdose deaths than any other illicit drug. *See* U.S. Department of Justice Drug Enforcement Administration, 2020 National Drug Threat Assessment, at 7.[1] "Nearly 70 percent of all drug overdose deaths in the United States in 2018 involved an opioid. Deaths involving synthetic opioids other than methadone—the category which includes fentanyl—increased by 10 percent according to data provided by the Centers for Disease Control and Prevention (CDC)." *Id.* "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues. Overall,

---

[1] This report is available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf (last visited August 22, 2023).

3

fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States." *Id.* at 12.

Fentanyl analogs, often even more dangerous than fentanyl, are increasingly involved in overdose deaths. The analog that Cordero trafficked, para-fluorofentanyl, was involved in 1,658 overdose deaths reported by 43 United States jurisdictions during July 2020 – June 2021. *See* J. Bitting et al., Notes from the Field: Overdose Deaths Involving Para-fluorofentanyl – United States, July 2020-June 2021 (Sept. 30, 2022).[2] The number of such deaths increased 455.3% from July-December 2020 to January-June 2021. *See id.*

Massachusetts has been one of the states hardest hit by the opioid crisis and was among the top five states with the most fentanyl reports in 2019. *Id.* at 8. These statistics are not hypothetical – they describe the opioid overdose crisis occurring in this district. The epidemic is real and being felt every day by families across Massachusetts and New England.

The defendant's crimes played a role in fueling this epidemic, and there is no telling the damage the defendant could have done to the community if he had been allowed to distribute his fentanyl and fentanyl analog in Massachusetts. The nature of this offense requires a significant sentence of imprisonment.

### B. Specific and General Deterrence and Protection of the Public

A significant sentence of imprisonment is warranted to deter others from becoming involved in any way, role, or capacity in the trafficking of fentanyl or fentanyl analog as the dangers associated with both cannot be overstated. Individuals tempted to engage in drug trafficking must understand that any involvement with fentanyl or its analogs, no matter how

---

[2] A synopsis of this article is available at https://www.cdc.gov/mmwr/volumes/71/wr/mm7139a3.htm (last accessed August 24, 2023).

minimal, will have immediate and serious consequences. Imprisonment is necessary to send a strong warning to others who might otherwise consider trafficking these dangerous drugs or assisting those who do.

Considerations of specific deterrence also support the imposition of a sentence of 41 months' imprisonment. Though he endured hardships growing up in the Dominican Republic, the defendant completed high school and has some college education. PSR ¶¶ 38, 45. After coming to the United States he maintained relatively stable employment. *See id.* ¶¶ 45-50. The defendant lived in an apartment in the South End with his partner and twin sons, and keeps a "great" relationship with his parents. *Id.* ¶¶ 39-40. He reported no mental health or emotional issues. PSR ¶ 43. The defendant reported no substance abuse history, so this is not a case of a defendant selling drugs in order to feed his own addiction. PSR ¶ 44. Despite this relatively positive family situation, work skills and history, and freedom from addiction, the defendant still chose to engage in the trafficking of dangerous drugs. This Court should impose a significant term of imprisonment to deter this defendant from ever again engaging in drug trafficking.

### C. Avoiding Unwarranted Sentencing Disparities

As Probation described in the PSR, of the 209 defendants with similar guidelines, drug type, and criminal history sentenced in the last five fiscal years, the average length of sentence imposed was 40 months. PSR ¶ 71. The government's recommendation is only 6 months greater than this average sentence. Because the government's recommended sentence is within range of the average sentences other courts have imposed in similar cases, to vary significantly downward (or upward) would create an unwarranted sentencing disparity and should be avoided.

III. CONCLUSION

The government's sentencing recommendation considers the various factors set forth in § 3553(a) and the Sentencing Guidelines. Given these factors, the government believes that 46 months' imprisonment is an appropriate sentence and is justified by the defendant's conduct in this case and his criminal history. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

                                              Respectfully submitted,

                                              JOSHUA S. LEVY
                                              Acting United States Attorney

By:    */s/ Samuel R. Feldman*
        Samuel R. Feldman
        Assistant United States Attorney
        617-748-3258

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                          */s/ Samuel R. Feldman*
                                          Samuel R. Feldman
                                          Assistant United States Attorney

Date: August 24, 2023